JOHN M. MAGLIERY (*Pro Hac Vice to be sought*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340
Email: johnmagliery@dwt.com

JAMES H. MOON (CA State Bar No. 268215)
MARCY BLATTNER MICALE (CA State Bar No. 319868)
KENDAL C. MITCHELL (CA State Bar No. 335091)
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
Email: jamesmoon@dwt.com
marcymicale@dwt.com
kendalmitchell@dwt.com

Attorneys for Defendant
ZAPPOS.COM LLC

DAVIS WRIGHT TREMAINE LLP

**IN THE UNITED STATES DISTRICT COURT**

**THE NORTHERN DISTRICT OF CALIFORNIA**

JEANETTE MCFARLANE, individually and on behalf of all other similarly situated,

Plaintiff,

v.

ZAPPOS.COM LLC,

Defendant.

Case No. 3:25-cv-10547-CRB

**DEFENDANT ZAPPOS.COM LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY CASE; MEMORANDUM OF POINTS AND AUTHORITIES**

**[*Declarations of Ashley Perry and Marcy Blattner Micale, Proposed Order Filed Concurrently*]**

**CLASS ACTION**

Date: April 10, 2026
Time: 10:00 a.m.
Courtroom: 6 – 17th Floor

Judge: Charles R. Breyer

Complaint Filed: December 9, 2025

DAVIS WRIGHT TREMAINE LLP

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, PLAINTIFF, AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 10, 2026 at 10:00 a.m. or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Defendant Zappos.com LLC ("Zappos") will, and hereby does, move the Court for an order to compel this matter to arbitration and to stay the action pending completion of the arbitration.

Zappos's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Ashley Perry and Marcy Blattner Micale, the pleadings and papers on file in this matter, and on such other written and oral argument as may be presented to the Court.

DATED: February 11, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Marcy Blattner Micale*
Marcy Blattner Micale

*Attorneys for Defendant ZAPPOS.COM, LLC*

DAVIS WRIGHT TREMAINE LLP

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Court should compel Plaintiff Jeanette McFarlane ("Plaintiff") to arbitrate her claims against Zappos pursuant to the dispute resolution clause ("Arbitration Agreement") contained in Zappos's Conditions of Use ("COUs") because (a) Plaintiff and Zappos entered into a valid and enforceable arbitration agreement, which was repeatedly reaffirmed with each purchase made by Plaintiff; and (b) Plaintiff agreed to arbitrate any and all disputes and claims relating to, arising from or regarding her use of any Zappos service, any products or services sold or distributed by Zappos or through Zappos.com, or any other Zappos website.

2. Whether the parties clearly and unmistakably delegated threshold issues of arbitrability to the arbitrator.

3. Whether the parties' waiver of the right to bring a class action requires dismissal of Plaintiff's class claims.

4. Whether the Court should stay this action pending arbitration completion.

**SUMMARY OF ARGUMENT**

The Court should grant Zappos's Motion to Compel Arbitration and Stay Case because (1) Plaintiff entered into a valid arbitration agreement with Zappos that covers Plaintiff's privacy claims (*see Uber Tech., Inc. v. Royz*, 517 P.3d 905, 908 (Nev. 2022)), (2) Plaintiff and Zappos delegated the issue of arbitrability to the arbitrator (*see Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015)), (3) Plaintiff agreed to proceed on an individual basis only (*see Tallman v. Eighth Jud. Dist. Ct.*, 359 P.3d 113, 121 (Nev. 2015)), and (4) the Court should stay this litigation pending arbitration (*see Smith v. Spizzirri*, 601 U.S. 472, 478 (2024)).

DAVIS WRIGHT TREMAINE LLP

## Table of Contents

Page


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

A. All Customers Agree to the Zappos COUs and Privacy Notice. ..... 1

1. Purchasing Goods on Zappos's Website. ..... 1

2. Submitting Orders on Zappos's iOS Application. ..... 2

3. Placing Orders on Zappos's Android Application. ..... 3

B. Zappos's Arbitration Agreement and Privacy Notice. ..... 4

1. Arbitration Agreement. ..... 4

2. Privacy Notice. ..... 5

C. Plaintiff Necessarily Assented to COUs and Privacy Notice. ..... 5

III. ARGUMENT ..... 6

A. Plaintiff Entered Into a Valid Arbitration Agreement. ..... 6

1. Nevada Law Applies to the Substance of Plaintiff's Claims. ..... 8

2. Plaintiff is Bound by the Arbitration Agreement. ..... 8

B. The Parties Delegated Any Issues Regarding Arbitrability. ..... 10

C. The Court Should Order Individual Arbitration and Dismiss Putative Class Claims. ..... 11

D. The Court Should Stay This Action Pending Individual Arbitration. ..... 12

IV. CONCLUSION ..... 12

## Table of Authorities

**Page**

**Cases**

*Aanderud v. Super. Ct.*,
13 Cal. App. 5th 880 (2017) .......... 10

*Airbnb, Inc. v. Rice*,
518 P.3d 88 (Nev. 2022) .......... 10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 11

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .......... 7

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 7, 10

*Certified Fire Prot. Inc. v. Precision Constr.*,
283 P.3d 250 (Nev. 2012) .......... 8

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .......... 7

*Davis v. CACH, LLC*,
2015 WL 913392 (N.D. Cal., March 2, 2015) .......... 8

*Donovan v. RRL Corp.*,
26 Cal. 4th 261 (2001) .......... 8

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .......... 7, 11

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013) .......... 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......... 7, 10

*Hofer v. Emley*,
2019 WL 4575389 (N.D. Cal. Sept. 20, 2019) .......... 7

*Iskanian v. CLS Transp. L.A., LLC*,
59 Cal. 4th 348 (2014), *overruled on other grounds* by *Quach v. Cal. Commerce Club*, 16 Cal. 5th 562 (2024) .......... 11

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 8

DAVIS WRIGHT TREMAINE LLP

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) .......... 9

*N. River Ins. Co. v. James River Ins. Co.*,
116 F.4th 855 (9th Cir. 2024) .......... 9

*Nevarez v. Forty Niners Football Co.*,
2017 WL 3492110 (N.D. Cal., Aug. 15, 2017) .......... 9

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 8

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 7, 9, 10

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 12

*Tallman v. Eighth Jud. Dist. Ct.*,
359 P.3d 113 (Nev. 2015) .......... 11

*U.S. v. Sutcliffe*,
505 F.3d 944 (9th Cir. 2007) .......... 7

*Uber Tech., Inc. v. Royz*,
517 P.3d 905 (Nev. 2022) .......... 8, 9

**Statutes**

9 U.S.C.
§ 2 .......... 7
§ 3 .......... 12
§ 4 .......... 8

DAVIS WRIGHT TREMAINE LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

All of Plaintiff's claims are subject to Zappos's Privacy Notice and Conditions of Use ("COUs"), both of which, based on the terms she necessarily accepted when she made online purchases from Zappos on December 13, 2023, confirm Plaintiff must individually arbitrate her claims. Specifically, these policies contain a binding arbitration agreement and class action waiver broadly covering disputes concerning, among other things, "[a]ny dispute or claim relating in any way to [her] use of any Zappos Service" and "any dispute over privacy"[1] ("Arbitration Agreement"). Plaintiff's claims thus fall squarely within the scope of the Arbitration Agreement, under which Plaintiff also agreed she would not bring a class action against Zappos.

Plaintiff cannot evade her legal obligation to arbitrate individually. Courts routinely enforce similar agreements and class action waivers under the Federal Arbitration Act ("FAA") case law. This Court should enforce the Arbitration Agreement, compel Plaintiff's claims to individual arbitration, and stay proceedings pending the outcome of her arbitration.

## II. FACTUAL BACKGROUND

### A. All Customers Agree to the Zappos COUs and Privacy Notice.

Zappos is an online clothing and home goods store based in Nevada. Perry Decl. ¶ 3. Zappos requires its consumers to affirmatively assent to its COUs and Privacy Notice before completing any purchase on its website or its mobile applications. *Id.* ¶¶ 4, 8, 9, 13, 17. In December 2023, customers could make a purchase from Zappos on its website or on its iOS and Android applications. *Id.* ¶ 5. In every instance, assent to the COUs is required.

#### 1. Purchasing Goods on Zappos's Website.

To purchase a product on the Zappos website in December 2023, customers could choose to sign-in in one of three ways: (1) signing into their Zappos account, (2) signing in with their Amazon account, or (3) signing in with their Google account. Perry Decl. ¶ 6.

[1] Zappos's Privacy Notice incorporates Zappos's COUs by reference. *See* Declaration of Ashley Perry ("Perry Decl.") at Ex. B.

DAVIS WRIGHT TREMAINE LLP

Regardless of the sign-in process a customer used, all customers had to have placed selected items in their Bag. *Id.* ¶ 7. After placing their selected items in their Bag, they would have had to navigate to the Checkout screen. *Id.* After inputting shipping and billing information, all customers would have had to click the "Place Your Order" button. *Id.* ¶ 8. This button was directly above a notice stating, "By placing your order, you agree to zappos.com **privacy notice** and **conditions of use.**" *Id.* Both the "Conditions of use" and "privacy notice" were bolded, blue, and underlined to communicate that they are hyperlinks, which redirected customers to the full COUs and Privacy Notice. *Id.* Consumers could not complete the checkout process without clicking the "Place Your Order" button, a true and correct copy of which is immediately below. *See id.*




**2. Submitting Orders on Zappos's iOS Application.**

If customers used Zappos's iOS application in December 2023 to place an order, all customers would have had to sign into either their Zappos account or their Amazon account. Perry Decl. ¶ 10. Regardless of the sign-in method, underneath the login button included the following language: "By signing in, you agree to Zappos.com's Privacy Notice, License Agreement, and Terms of Use." *Id.* ¶ 11. The "Privacy Notice," "License Agreement," and "Terms of Use" were in blue text to indicate they were hyperlinks, which directed users to the full COUs, Privacy Notice, and License Agreement. *Id.*

All customers using the Zappos's iOS application in December 2023 would have then had to place selected items into their Bag. *Id.* ¶ 12. After placing their selected items in their Bag, the iOS application would navigate customers to the Checkout screen. *Id.* Next, and after inputting billing and shipping information, customers would have had to press the "Submit My Order" button to complete their order. *Id.* ¶ 13. Immediately above the "Submit My Order" button read the following text: "By submitting this order, you agree to use Zappos.com's Privacy

Notice, License Agreement, and Terms of Use." *Id.* The "Privacy Notice," "License Agreement," and "Terms of Use" were in blue text to indicate they were hyperlinks, which directed users to the full COUs, Privacy Notice, and License Agreement. *Id.* Customers could not complete their purchase without pressing the "Submit My Order" button, of which a true and correct copy is below. *Id.*




**3. Placing Orders on Zappos's Android Application.**

To place an order using Zappos's Android application in December 2023, customers could log-in in one of three ways: (1) signing in with a Zappos's account, (2) signing in with an Amazon account, or (3) signing in with a Google account. Perry Decl. ¶ 15. Under those login options stated the following text: "By signing in, you agree to Zappos <u>Terms and Conditions</u> and <u>Privacy Policy</u>." *Id.* Both the "Terms and Conditions" and "privacy notice" were underlined to communicate that they were hyperlinks, which redirected customers to the full COUs and Privacy Notice. *Id.*

All customers who checked out using the Zappos's Android application in December 2023 had to have first placed selected items into their Cart. *Id.* ¶ 16. Customers were then directed to the Checkout page to submit their order. *Id.* After providing Zappos with their billing and shipping information, all customers using the Zappos's Android Application in December 2023 had to have pressed the "Submit My Order" button to complete their order. *Id.* ¶ 17. Immediately above the "Place My Order" button read the following text: "By submitting this order, you agree to use Zappos.com's Privacy Notice, License Agreement, and Terms of Use." *Id.* The "Privacy Notice," "License Agreement," and "Terms of Use" are in bolded to indicate they are hyperlinks, which directs users to the full COUs, Privacy Notice, and License Agreement. *Id.* Customers could not complete their purchase without pressing the "Place Your Order" button, of which a true and correct copy is immediately below. *Id.*




**B. Zappos's Arbitration Agreement and Privacy Notice.**

**1. Arbitration Agreement.**

The COUs in effect on December 13, 2023, contained a header in bold and capitalized letters called "**DISPUTES, REMEDIES & APPLICABLE LAW.**" Perry Decl. ¶¶ 18, 19, Ex. A. This section includes the following language:

- **… or any other Zappos website will be resolving by binding arbitration, rather than in court**." Perry Decl. ¶ 19 (bold in original);
- "[a]ny dispute or claim relating in any way" to a customer's "use of any Zappos Service, or to any products or services sold or distributed by Zappos or through Zappos.com or any other Zappos website," including any dispute over privacy. *Id.*;
- "You agree that the Federal Arbitration Act, applicable federal law, and the laws of the state of Nevada (without regard to principles of conflict of laws), will govern these Conditions of Use and any dispute of any sort that might arise between you and Zappos." *Id.*;
- "**There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive relief and declaratory relief or statutory damages), and must follow the terms of these Conditions as a court would.**" *Id.* ¶ 20 (bold in original);
- "The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes. The AAA's rules are available at www.adr.org or by calling 1-800-778-7879." *See id.* ¶ 21; and

DAVIS WRIGHT TREMAINE LLP

- "**You and Zappos both agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.**" *Id.* ¶ 22 (bold in original).

**2. Privacy Notice.**

Any user who visits or completes an order on the Zappos website agrees to accept the practices contained in Zappos's Privacy Notice. Perry Decl. ¶ 24. The Privacy Notice explains Zappos gathers some personal information about consumers including information consumers give Zappos, automatic information (i.e., cookies), mobile information if a consumer downloads or uses applications created by Zappos, email communications, and information from other source (i.e., updated delivery and address information from Zappos's carriers and information from credit bureaus). *Id.* ¶ 25. The Privacy Notice also confirms Zappos uses web beacons and other unique identifiers (collectively "cookies") to speed a consumer's navigation of the Zappos website, enable consumers to select products, place them in a consumer's shopping cart, and purchase those products. *Id.* ¶ 26. It discloses how Zappos shares customer information. *Id.* ¶ 27.

The Privacy Notice includes a section with the following bolded heading: "**Conditions of Use, Notices, and Revisions.**" *Id.* ¶ 29. This section includes a hyperlink to the COUs and confirms that "any dispute over privacy is subject to this Notice and our Conditions of Use, including limitations on damages, resolution of disputes, and application of the law of the State of Nevada." *Id.*

**C. Plaintiff Necessarily Assented to COUs and Privacy Notice.**

Plaintiff alleges she purchased three pairs of shoes from the Zappos website on December 13, 2024. Compl. ¶ 6.[2] As a result, before completing her order, she must have agreed to the

---

[2] Zappos made efforts, but was unable, to identify Plaintiff in its records based on the allegations in the Complaint. Declaration of Marcy Blattner Micale ¶ 2. Plaintiff's counsel refused to provide any further information about Plaintiff, her alleged December 13, 2023 Zappos order, or any potential Zappos account prior to filing this Motion, despite multiple requests from Zappos's counsel. *Id.* Accordingly, Zappos reserves the right to file additional evidence in its reply brief if Plaintiff provides information about her Zappos account in her Opposition. And to the extent Plaintiff disclaims her assent to the Arbitration Agreement, Zappos requests that the Court order Plaintiff to provide identifying information about her purchase method and account history.



DAVIS WRIGHT TREMAINE LLP

COUs and Privacy Policy, which were publicly available on Zappos's website on that date. *See* Perry Decl. ¶ 31. However, despite agreeing to binding individual arbitration concerning "any dispute or claim relating in any way to [her] use of any Zappos service" and "any dispute over privacy," *see* Section II.B, Plaintiff filed the instant lawsuit, a putative class action, in the Northern District of California on December 9, 2025, in which she alleges violations of the federal Electronic Communication Privacy Act ("ECPA"), California Invasion of Privacy Act ("CIPA"), the California Comprehensive Computer Data and Access and Fraud Act ("CCDAFA"), and invasion of privacy under the California Constitution, *see generally* Compl. Specifically, she claims that Zappos allegedly "intercepts and discloses sensitive personal information about Plaintiff" to Meta and that Zappos "intentionally" intercepted "electronic communications" which "broadly encompasses" writings "transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate or foreign commerce." Compl. ¶¶ 23, 43–44, 120–195.

Accordingly, each of these privacy claims are based on her use of the Zappos website and subject to arbitration on an individual basis, pursuant to the Arbitration Agreement. *See id.* ¶ 6. The Court should enforce the Arbitration Agreement, compel this dispute to individual arbitration, and stay this action pending completion of arbitration.

## III. ARGUMENT

### A. Plaintiff Entered Into a Valid Arbitration Agreement.

The Court should enforce the Arbitration Agreement according to its terms. The FAA applies to the question of enforceability of the Arbitration Agreement because it meets the two legal criteria for the FAA to apply: (1) the Arbitration Agreement expressly incorporates the FAA and (2) the Complaint alleges facts showing a transaction relating to commerce. Perry Decl. Ex. A (COUs) at 4 ("You agree that the Federal Arbitration Act … will govern these Conditions of Use and any dispute of any sort that might arise between you and Zappos."); Compl. ¶¶ 43–44 (alleging Zappos "intentionally" intercepted "electronic communications" which "broadly encompasses" writings "transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate or foreign



DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

commerce."); 9 U.S.C. § 2 (FAA applies where there is a "written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction"); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (recognizing that "federal law governs the arbitrability question by default because the Agreement is covered by the FAA[.]"). Because Plaintiff's dispute involves commerce, and the Arbitration Agreement incorporates the FAA, the FAA applies here. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).[3]

Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects federal policy recognizing that "arbitration is a matter of contract, and courts ***must*** enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019) (emphasis added). Congress enacted the FAA to overcome judicial hostility to arbitration because "in Congress's judgment arbitration ha[s] more to offer than courts recognize[]—not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (the FAA "requires courts 'rigorously' to 'enforce arbitration agreements'").

As a result, "[t]he FAA limits federal court review of arbitration agreements to two gateway arbitrability issues: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'" *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). If the court answers both questions in the affirmative, it "must order the parties to proceed to arbitration in accordance with the terms of the agreement." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 509–10 (9th Cir. 2023) (citing 9 U.S.C. § 4). Here, the Court should compel individual arbitration, dismiss the class claims, and stay the case because a valid arbitration agreement exists between her and Zappos that covers her claims.

[3] Because the transactions at issue require use of the internet, they affect interstate commerce. *See U.S. v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("[A]s both the means to engage in commerce and the method by which transactions occur, 'the Internet is an instrumentality and channel of interstate commerce.'"); *Hofer v. Emley*, 2019 WL 4575389 at *12 (N.D. Cal. Sept. 20, 2019) (finding agreement affected interstate commerce and the FAA applied because plaintiff had to access the internet using his smartphone in order to engage with the company).

**1. Nevada Law Applies to the Substance of Plaintiff's Claims.**

The Conditions of Use confirm that Nevada state law applies to any binding arbitration. *See* Perry Decl., Ex. A at 4. Nevada follows the choice of law principles outlined by the Restatement (Second) of Conflict of Laws, "which demands that the Court apply the choice of law selected by the parties to the contract unless (1) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice or (2) application of the law of the chosen state would be contrary to a fundamental policy of a state with a materially greater interest than the chose state in the determination of a particular issue." *Davis v. CACH, LLC*, 2015 WL 913392 at *3 (N.D. Cal., March 2, 2015) (noting that the result would be the same under California's choice of law rules, which also follows the Restatement). Here, Nevada has a substantial relationship to this transaction because its principal address at the time of contracting was in Las Vegas, Nevada. Perry Decl. ¶ 3. Nevada recognizes a strong public policy in favor of enforcing arbitration agreements. *See Uber Tech., Inc. v. Royz*, 517 P.3d 905, 908 (Nev. 2022) ("Nevada has a fundamental policy favoring the enforceability of arbitration agreements and [Nevada courts] will liberally construct arbitration clauses in favor of granting arbitration.") (citation omitted). Accordingly, while Nevada law applies to the Arbitration Agreement and requires its enforcement, California law requires the same result.

**2. Plaintiff is Bound by the Arbitration Agreement.**

To assess an agreement's validity, courts apply ordinary state-law contract principles. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Under Nevada law, courts look for the presence of mutual assent to the contract. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023); *see Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255 (Nev. 2012) ("Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration.") (citation omitted); *see also Donovan v.*



DAVIS WRIGHT TREMAINE LLP

*RRL Corp.*, 26 Cal. 4th 261, 270–71 (2001) ("objective manifestation of the party's assent ordinarily controls").[4]

A single-click agreement to be bound in which a user is provided with an opportunity to review the terms of service using a hyperlink next to the "Sign Up" or "Create Account" button is sufficient to show mutual assent under California and Nevada law. *See Royz*, 517 P.3d at 911 n.3 (Nevada Supreme Court was "unpersuaded" by plaintiffs' arguments that they did not assent to online contract where plaintiffs "indisputably" created Uber accounts in which they agreed to terms and conditions); *see also Oberstein*, 60 F.4th at 515 (applying California law) (holding users were provided constructive notice of arbitration agreement because defendant's terms of use were displayed directly above or below the action button to complete a purchase); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. 2020) (affirming order compelling arbitration because user assented each time he clicked action button above hyperlinked notice); *Nevarez v. Forty Niners Football Co.*, 2017 WL 3492110 at *8 (N.D. Cal., Aug. 15, 2017) (compelling arbitration because plaintiff assented to terms "visible via a hyperlink" below the buttons "Accept and Continue" and "Sign In").

These courts look to whether "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein*, 60 F.4th at 515. In *Oberstein*, the Ninth Circuit affirmed an order compelling arbitration, finding that the notice was "reasonably conspicuous" because it was "displayed directly above or below the action button"; its language "clearly denote[d]" that further action would "act as a manifestation of the user's intent to be bound"; and "crucially, the … hyperlink [to the terms was] conspicuously distinguished from the surrounding text," in order to be readily apparent to the user. *Id.* at 516. Nothing more was needed for the Ninth Circuit to find "that a reasonable user would have seen the notice and been able to locate the Terms via hyperlink." *Id.*

---

[4] Nevada courts routinely look to California law for guidance in areas where Nevada law is less developed. *See, e.g.*, *N. River Ins. Co. v. James River Ins. Co.*, 116 F.4th 855, 859 (9th Cir. 2024) (noting "where Nevada law is less developed on an issue … Nevada courts have looked to the laws of other states, including California.").

DAVIS WRIGHT TREMAINE LLP

Here, the disclosures in the Zappos account sign-up process similarly meet both requirements identified by the Ninth Circuit in *Oberstein*. ***First***, Zappos provided conspicuous notice of the COUs and Privacy Notice by placing hyperlinks to them in bold and underlined under the "Place Your Order" button on Zappos's checkout page. Perry Decl. ¶ 8. ***Second***, Plaintiff necessarily manifested assent to the Terms by clicking the "Place Your Order" button directly above the notice, because all customers were required to do so in order to place an order. *Id.* ¶¶ 4, 8, 9, 13, 17, 31. As a result, Plaintiff agreed to the COUs and Privacy Notice, including the Arbitration Agreement.

**B. The Parties Delegated Any Issues Regarding Arbitrability.**

While the Court is empowered to decide if an arbitration agreement exists – as it certainly does here – once that determination has been made, only the arbitrator must resolve any arguments Plaintiff may present as to enforceability, scope, or applicability of the arbitration provision to the claims asserted in this matter, as the parties agreed. "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may ***not*** decide the arbitrability issue." *Henry Shein*, 586 U.S. at 69 (emphasis added); *accord Brennan*, 796 F.3d at 1130 ("gateway issues" over the validity and enforceability of arbitration provisions "can be expressly delegated to the arbitrator"); *Airbnb, Inc. v. Rice*, 518 P.3d 88, 92 (Nev. 2022) ("[W]hen a contract delegates the arbitrability question to the arbitration, a court has no authority to decide whether the arbitration agreement applies to the dispute[.]"); *Aanderud v. Super. Ct.*, 13 Cal. App. 5th 880, 891–92 (2017) (parties may delegate arbitrability to arbitrator).

The Arbitration Agreement incorporates AAA Rules, which delegates the issue of arbitrability to the arbitrator. *See* Perry Decl. Ex. A at 4 (COUs) ("The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes."); AAA Consumer Arbitration Rules & Mediation Pro. R-7(a) ("The arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim.")[5]; *Brennan*, 796 F.3d at 1130–31

[5] Available at https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf.

DAVIS WRIGHT TREMAINE LLP

(incorporation of AAA Rules is clear and unmistakable delegation of arbitrability to arbitrator). As a result, the Court should compel arbitration, including any challenges to the scope, enforceability, or applicability of the Arbitration Agreement.

But even if the Court examined arbitrability, the broad scope of the Zappos arbitration provision clearly encompasses this dispute. Because the scope of an arbitration agreement is a matter of contract, determining whether a dispute is subject to arbitration is a matter of contract interpretation. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011) ("[a]rbitration is a matter of contract, and the FAA requires courts to honor parties' expectations"); *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 937–38 (9th Cir. 2013) (courts must look to "the express terms of the agreements at issue" to determine whether the parties have agreed to arbitrate their claims). Plaintiff's claims are covered by the Arbitration Agreement as they are arise out of "use of any Zappos Service, or to any products or services sold or distributed by Zappos or through Zappos.com or any other Zappos website." Perry Decl. Ex. A.

**C. The Court Should Order Individual Arbitration and Dismiss Putative Class Claims.**

Plaintiff agreed not to prosecute any class action claims against Zappos. Class-action waivers in arbitration agreements are enforced according to their terms. *Concepcion*, 563 U.S. at 351–52; *Epic Sys. Corp.*, 584 U.S. at 497 ("Congress has instructed in the Arbitration Act that arbitration agreements providing for individualized proceedings must be enforced[.]"). Both the Nevada and California Supreme Courts have similarly held that the FAA preempts any state law finding that class action waivers are unenforceable. *Tallman v. Eighth Jud. Dist. Ct.*, 359 P.3d 113, 121 (Nev. 2015) ("[N]othing in *Concepcion* suggests that the FAA preemption principles it articulates do not apply broadly in other contexts"); *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 366 (2014) (concluding "in light of *Concepcion* that the FAA preempts" older California case invalidating class action waivers in certain employment contracts), *overruled on other grounds* by *Quach v. Cal. Commerce Club*, 16 Cal. 5th 562 (2024). Here, the FAA governs the Arbitration Agreement, and the Arbitration Agreement contains a class action waiver. Perry Decl. Ex. A at 4 ("**You and Zappos both agree that any dispute resolution**

**proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action**.") (emphasis in original). Therefore, the Court should compel Plaintiff to arbitrate her claims on an individual basis and dismiss the putative class claims.

**D. The Court Should Stay This Action Pending Individual Arbitration.**

Once the Court is satisfied a suit should be moved to arbitration, it "shall … stay the trial of the action." 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). The Court should stay Plaintiff's claims pending the outcome of her individual arbitration.

## IV. CONCLUSION

Zappos respectfully requests that the Court compel Plaintiff to arbitrate her claims on an individual basis, dismiss her class claims, and stay this case pending arbitration resolution.

DATED: February 11, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ James H. Moon*
James H. Moon

*Attorneys for Defendant ZAPPOS.COM, LLC*